IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–00562–WYD–KMT


SCOTT WILLIAM DEUTY,

      Plaintiff,

v.

HP (HEWLETT-PACKARD),
JESSICA SWANK, and
RON ROGERS,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants' Combined Motion to Dismiss Claims Pursuant to Fed. R. Civ. P. 12(b)(1) for Failure to Exhaust Administrative Remedies and for Summary Judgment as to Remaining Claims" (Doc. No. 62 [Mot.]) and on Plaintiff's "Amended Claim," which the court construes as a motion to amend the complaint (Doc. No. 54).

## STATEMENT OF THE CASE

      The following description is taken from Plaintiff's operative complaint (Doc. No. 5 [Compl.]), Defendants' Answer (Doc. No. 19 [Answer]) and the parties' submissions with respect to this recommendation.  Plaintiff's claims arise out of his employment and termination from employment with Defendant Hewlett-Packard (HP).

Plaintiff was employed by HP on February 16, 2005 as an "expert" level Senior

Hardware Power Design Engineer in the Workstations Global Business Unit. (Compl. at 8; Mot.

at ¶ 1.)  In January 2008 he sought permission to use HP travel funds to attend APEC, an

industry conference for engineers, where he had a "career boosting opportunity to chair a

session." (Compl. at ¶¶ 24, 25; Mot. at ¶ 25.)  Plaintiff's travel request was denied. (Compl. at ¶

25.)  He claims that, in March 2008, a female employee received permission to attend a women's

business conference in San Francisco. (*Id.* at ¶ 26.)  Plaintiff asserts that he complained of

gender bias in the travel decisions to his immediate supervisor Bob Frederickson in May 2008.

(*Id.* at ¶ 25A.)  In November 2008, he reported to HP Human Resources Representative, Jessica

Swank, that his second level supervisor Ron Rogers had committed gender bias by allowing the

female employee to attend a conference for non-business purposes. (*Id.* at ¶ 25E; Mot. at ¶ 51.)

Plaintiff alleges that, in response to his accusations of gender bias, HP began a series of

retaliatory measures. (Compl. at ¶ 25.)  He asserts that on May 9, 2008 he received a "letter of

warning" and was placed on "Corrective Action." (*Id.* at ¶ 25B.)  According to Plaintiff, he

"free[d] himself of corrective action" in July 2008. (*Id.* at ¶ 25C.)  He claims that, in August

2008, an Iranian student intern was "moved from motherboard power to silver box power where

[Plaintiff] works" but Plaintiff's request to move to motherboard power was denied. (*Id.* at

¶ 25D.)  Plaintiff asserts that "it [was] very clear by this move of the Iranian student [] intern that

[Plaintiff] was retaliated against when not being allowed to move to motherboard power." (*Id.*)

In December 2008, Plaintiff received "an unfavorable 'I' (improvement) rating . . . stating that

'No one gets along with you.'" (*Id.* at ¶ 25G.)  Plaintiff contends that a female employee who

was originally selected to attend the women's business conference received negative feedback from two employees under her management.  (*Id.*)  Plaintiff also alleges that his employee review was filed "at the very last minute" in early January 2009, leaving him no time to protest his rating which is allowed under HP policy.  (*Id.* at ¶ 25H.)  He claims he complained that he was being "singled out in a retaliatory manner by not being allowed the same privileges as other employees."  (*Id.*)

Plaintiff asserts that in January 2009 he sought help from his psychiatrist regarding "the ability to get along with others."  (Compl. at ¶ 26.)  According to Plaintiff, his psychiatrist stated that "the ability to get along is directly related to [Plaintiff's] condition" and wrote a letter to Plaintiff's supervisor regarding Plaintiff's "medical situation."  (*Id.*)  HP requested that Plaintiff submit information necessary for it to consider his request for medical accommodation.  (*Id.*; Answer at ¶ 26(sic).)  Plaintiff claims that, in late March 2009, he completed an education program and "[went] off medical monitoring" by HP.  (Compl. at ¶ 29.)

Plaintiff alleges that he filed a complaint with the Equal Employment Opportunity Commission (EEOC) regarding gender bias on January 5, 2009.  (*Id.* at ¶ 27.)  He claims that, on June 1, 2009, he was informed that he would be laid off and was asked to transfer his work to the Iranian student intern.  (*Id.* at ¶ 30.)  He contends that he was also "asked to teach his replacement . . . a job skill" to which he replied that "[t]eaching is not a requirement of [HP] as it specifically states that Expert level employees are to 'Share technology' however no mention of teaching skills is mentioned [sic]."  (*Id.* at ¶ 32.)

Plaintiff asserts federal statutory claims for gender, age and race discrimination,[1] and state law claims for breach of contract, promissory estoppel, negligence and intentional infliction of emotional distress against HP, as well as state law claims for negligence, intentional infliction of emotional distress and intentional interference with a contractual relationship against Jessica Swank, and intentional infliction of emotional distress against Ron Rogers. (*Id.* at 13-19.) Although his Complaint does not include a separate count for retaliation, it can be read as asserting a claim for retaliation against HP. (*See id.* at 1 & ¶ 25.) He seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees[2] and costs. (*Id.* at 20.) Plaintiff now seeks to amend his complaint to edit and correct certain allegations in his operative

---

[1] Plaintiff asserts that his action is brought pursuant to "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq. [and] the Civil Rights Act of 1866, as amended by the Civil Rights Restoration [sic] Act of 1991, 42 U.S.C. Section 1981 . . . and common law of the State of Colorado." (Compl. at ¶ 7.) Title VII prohibits employment discrimination on the basis of certain protected classes including race, color, religion, sex and national origin. 42 U.S.C. § 2000e-2. Age is not a protected class under Title VII and therefore a claim for age discrimination is not cognizeable under Title VII. *See DePayan v. Wend-Rockies, Inc.*, No. 07-cv-02520-LTB-MEH, 2008 WL 2168780, at *4 (D. Colo. May 21, 2008)(citing 42 U.S.C. § 2000e-2). Section 1981 prohibits discrimination on the basis of race in any contractual relationship. *Perry v. Woodward*, 199 F.3d 1126, 1132 (10th Cir. 1999); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 210 (1989) (Brennan, J., concurring in part)*, superceded by statute*, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1074. Construing Plaintiff's *pro se* complaint liberally, the court finds that Plaintiff asserts an age discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, which "broadly prohibits arbitrary discrimination in the workplace based on age." *Lorillard v. Pons*, 434 U.S. 575, 577 (1978) (citing 29 U.S.C. § 623(a)).

[2] Plaintiff has proceeded *pro se* since the inception of this action.

4

complaint[3] as well as add factual allegations supporting a claim for disability discrimination under the Americans with Disabilities Act.  (*See* Doc. No. 54.)

Defendants move to dismiss Plaintiff's federal statutory claims, other than the gender discrimination claim arising from his request to travel to the engineering conference, for lack of subject matter jurisdiction due to Plaintiff's failure to exhaust administrative remedies. Defendants seek summary judgment on all of Plaintiff's remaining federal and state law claims.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint on March 10, 2010 (Doc. No. 3) and amended it on March 17, 2010 to add his signature (Doc. No. 5 [Compl.]).  Defendants filed their answer on May 25, 2010.  (Doc. No. 19.)  On July 13, 2010 this court held a scheduling conference and set discovery deadlines.  (Doc. Nos. 27, 28.)  The parties proceeded with discovery.  On February 28, 2011, Plaintiff filed a document entitled "Amended Claim for the initial Complaint and Jury Demand" (Doc. No. 54) which this court construes as a motion to amend.[4]  On March 15, 2011, Defendants responded to Plaintiff's Motion to Amend.  (Doc. No. 61.)  Plaintiff has not filed a reply.  On March 17, 2011, Defendants filed their combined Motion to Dismiss and Motion for Summary Judgment.  (Doc. No. 62 [Mot.].)  Plaintiff filed a response on April 13, 2011 (Doc.

---

[3] Plaintiff admits that he used a compliant he found on the internet as a model for his complaint (Doc. No. 62 Ex. A [Pl.'s Dep.] at 132:1-11) which includes clearly erroneous factual allegations such as "Counsel for [Plaintiff] formally requested a Notice of Right to Sue from the C.C.R.D. on May 5, 1997 and the EEOC on May 6, 1997."  (Compl. at ¶ 10C.)  Plaintiff was not hired by HP until 2005.  His proposed amendments seek, in part, to correct such errors.

[4] The procedural background with regard to Plaintiff's efforts to amend his complaint will be discussed in greater detail, *infra*, as the court consider's Plaintiff's motion to amend.

5

No. 73 [Resp.]) and Defendants replied on May 2, 2011 (Doc. No. 76 [Reply]).  Both motions

are ripe for review and recommendation.

### DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

**A.**   *Legal Standards*

**1.**   **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

*also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply

additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*,

927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the

plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not

entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir.

2002).

6

### 2. *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* (citations omitted).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### 3.     *Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgments as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld Cnty. Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell*, 472 F.3d at 1243; *see also Haines*, 404 U.S. at 520-21. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

**B.**     ***Analysis***

      **1.**     ***Title VII and ADEA Claims—Except Gender-Based Travel Decision***

      Defendants move to dismiss Plaintiff's federal statutory claims, except for Plaintiff's gender discrimination claim arising from the denial of his travel request, for failure to exhaust administrative remedies.

      In the Tenth Circuit, exhaustion of remedies is a jurisdictional prerequisite to a suit under Title VII and the ADEA. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). "Federal courts do not have subject-matter jurisdiction to review Title VII and ADEA claims not exhausted administratively." *Smith v. Potter*, 252 F. App'x 224, 227 (10th Cir. 2007). The burden is on the party invoking federal jurisdiction to establish that subject matter jurisdiction exists. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002). Because exhaustion is a jurisdictional prerequisite, a plaintiff may not cure a jurisdictional defect by pursuing administrative remedies after filing suit. *See Dalvit v. United Airlines, Inc.*, 359 F. App'x 904, 912 n.9 (10th Cir. 2009). Accordingly, failure to exhaust

available remedies is properly raised in a Fed. R.Civ. P. 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *Shikles*, 426 F.3d at 1317.

To exhaust his administrative remedies, a plaintiff generally must present his claim to the EEOC and receive a right-to-sue letter based on that charge. *Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). In Colorado, a plaintiff asserting claims under Title VII or the ADEA must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory action. *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice" that must be exhausted. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Termination of employment is a discrete employment action for which an employee must exhaust administrative remedies. *Id.*

The undisputed facts[5] show that Plaintiff filed a charge of discrimination with the EEOC on January 22, 2009. (Doc. No. 62 A-1 [January 2009 Charge].) This charge stated:

I.    In or about May 2008, I was denied an opportunity to go on a business-related trip.

II.   I believe I have been discriminated against because of my sex (Male), in violation of Title VII of the Civil Rights Act of 1964, as amended, in that:

   a.    I was performing my job satisfactorily.
   b.    The denial of attending the trip affected my career as a I could have chaired a session at the conference in my speciality.
   c.    In May 2008, a female employee was allowed to travel to a female-based conference that lacked business purpose.

_____

[5] Plaintiff does not dispute the charges of discrimination Defendants attach as Exhibits to their motion.

      d.     The opportunity to go on this trip was offered only to female employees.

      e.     This female employee gives female, minority and foreign workers preference in hiring.

(*Id.*)  Plaintiff filed his federal complaint on March 10, 2010.  (*See* Doc. No. 3.)  He filed a second charge of discrimination with the EEOC on August 4, 2010.  (Doc. No. 62 A-4 [August 2010 Charge].)  This second charge alleged retaliation in response to the first EEOC charge and age and disability discrimination in connection with his termination from employment.  (*Id.*)

Defendants argue that Plaintiff did not exhaust administrative remedies prior to commencing suit with respect to his ADEA claim or Title VII claims, other than the claim arising out of the denial of his travel request.  (Mot. at 13-14.)  The court agrees.  Because "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice" that must be exhausted," *Nat'l R.R.*, 536 U.S. at 114, Plaintiff must have exhausted his administrative remedies as to the retaliation and age and race discrimination claims prior to filing suit.  The only claim that he raised in the Janaury EEOC charge prior to filing suit is the gender discrimination claim related to the denial of his travel request.

Plaintiff argues that he did exhaust administrative remedies because he did not file suit until after the EEOC issued a right to sue letter in December 2009.  (Resp. at 2.)  He asserts that "the lawsuit is based primarily on the claim of retaliation due to the Plaintiff's gender based lawsuit."  (*Id.*)  He claims that he added the age and race claims as he uncovered evidence of them through discovery in this lawsuit.  (*Id.*)  Because he did not receive this evidence until

11

September 2010, "well after the 300 days allowed the Plaintiff to file with the EEOC based on his dismissal on July 31, 2009," he contends there were no remedies to exhaust. (*Id.*) Plaintiff also suggests that the August 2010 charge "amended his charges as his 300 day limit for a new charge had passed." (*Id.* at 3.)

Plaintiff's arguments regarding exhaustion fail for several reasons. First, Plaintiff's complaint alleges retaliation for complaining to his supervisor and a human resource representative of gender bias relating to the travel decision. Nowhere in the complaint does he allege retaliation following the filing of this lawsuit. Indeed, Plaintiff was terminated before he filed this lawsuit. As Defendants note in their reply, Plaintiff appears to use the terms "charge" and "lawsuit" and "EEOC" and "court" interchangeably. (*See* Reply at 8 n.5.) Thus, Plaintiff may intend to argue that his primary claim is for retaliation in response to the charge of gender discrimination he filed with the EEOC in January 2009. However, neither Plaintiff's operative complaint nor his proposed amendments makes such an allegation.

Second, even if the primary claim in this lawsuit is for retaliation arising out of the charge of gender discrimination, the January 2009 charge did not raise retaliation as an issue. Because "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for which administrative remedies must be exhausted, *Morgan*, 536 U.S. at 114, Plaintiff must have separately exhausted administrative remedies as to his retaliation claim. Although Plaintiff raised retaliation in his August 2010 charge, this charge was filed *after* he commenced this suit and therefore he did not exhaust administrative remedies as to the retaliation charge *prior* to filing suit which is required in this circuit. *See Shikles*, 426 F.3d at

1317; *see also Dalvit*, 359 F. App'x at 912 n.9 (a plaintiff may not cure a jurisdictional defect by pursuing administrative remedies after filing suit).

To the extent Plaintiff argues that his August 2010 charge amended his January 2009 charge, and therefore related back tot he date the first charge was filed, Plaintiff's argument fails. 29 C.F.R. § 1601.12 provides,

> A charge may be amended to cure technical defects or omissions . . . or to clarify and amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b).  On its face, Plaintiff's second charge does not appear to amend his first charge.  It is titled as a separate charge of discrimination, has a separate charge number, and alleges retaliation and entirely different bases for discrimination.  (*See* August 2010 Charge.) Even if the retaliation claim is based on the filing of the first charge of discrimination, the retaliation claim does not relate to or grow out of the subject matter of the original charge, which alleged gender bias in business travel decisions.  This circuit has held that a second charge does not relate back to a previous charge under § 1601.12(b) where the later charge includes an entirely new theory of recovery.  *Simms*, 165 F.3d at 1327 (holding that amended charge alleging retaliation did not relate back to original charge alleging race discrimination).  Moreover, even if Plaintiff's second charge relates back to his first charge, as discussed below, the second charge was not timely filed.

Third, Plaintiff's complaint, filed in March of 2010, asserts claims for age and race discrimination and alleges, *inter alia*, that the majority of employees laid off "were males at the

age of 40 or above and the majority of those males were white Americans" and that, while employed by HP, Plaintiff "had indicated age bias was taking place through his being replaced by a younger, less experienced employee and retention of younger, less experienced employees." (Compl. at ¶¶ 48, 72.)  Clearly, Plaintiff was aware of the basis for his age and race discrimination claims before filing suit and before undertaking any discovery.  Moreover, Plaintiff's assertion that he added age and race charges as he received evidence of them through discovery in September 2010 is undermined by the undisputed fact that he filed his second charge with the EEOC regarding age and race claims in August 2010.

Even if Plaintiff is found to have exhausted administrative remedies by filing his August 2010 charge, the charge was untimely.  While "the *filing* of a charge is jurisdictional, [] the *timeliness* of that charge is not.  *Carson v. Cudd Pressure Control, Inc.*, 299 F. App'x 845, 847 n.4 (10th Cir. 2008) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174-75 (10th Cir.1998)).  The requirement that a Plaintiff timely file a charge of discrimination with the EEOC "is best likened to a statute of limitations . . . subject to waiver, estoppel and equitable tolling."  *Beaird*, 145 F.3d at 1175.  As mentioned, in Colorado a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory action.  *Haynes*, 456 F.3d at 1222.

Defendants present argument and evidence that "Plaintiff was notified of his layoff on May 26, 2009, **435** days before he filed his second charge; Plaintiff's last day worked was June 26, 3009 [sic]; [sic] **404** days before he filed his second charge; and Plaintiff ceased receiving salary or benefits on his HP 'Termination Date' of July 31, 2009, **369** days before he filed his

14

second charge.  (*See* Mot. at 15; *see also* Doc. No. 62 Ex. D [Conrady Decl.] at ¶¶ 7-9; Doc. No.

62 Ex. D-3 [WFR letter]; Doc. No. 62 Ex. F [Snow Decl.] at ¶ 4.)  Plaintiff has not disputed this

evidence.  Accordingly, if Plaintiff is found to have exhausted administrative remedies, summary

judgment nevertheless would be appropriate on these claims.

In sum, the court finds that Plaintiff failed to exhaust administrative remedies as to his

Title VII and ADEA claims—retaliation, age and race discrimination[6]—except for his gender

discrimination claim arising from the denial of his travel request.  Accordingly, these claims

should be dismissed for lack of jurisdiction.  In the alternative, if Plaintiff is found to have

exhausted administrative remedies, summary judgment is nevertheless appropriate because

Plaintiff's August 2010 charge of discrimination with the EEOC was untimely.

### 2.    *Title VII Claim—Gender-Based Travel Decision*

Title VII prohibits an employer from failing or refusing to hire any individual or

otherwise discriminating against any individual "with respect to his compensation, terms,

conditions, or privileges of employment" on the basis of race, color, religion, sex, or national

origin.  42 U.S.C.§ 2000e-2(a)(1).  To be actionable under Title VII, an adverse employment

action must affect a "significant change" in an employee's employment status, "such as hiring

firing, failing to promote, reassignment with significantly different responsibilities, or a decision

---

[6] Plaintiff's complaint makes reference to the fact that he is a white American and
allegedly was replaced by an "Iranian student intern."  (Compl. at ¶¶ 1, 2, 31, 32, 48, 84.)  To the
extent he seeks to assert a claim for discrimination based on national origin, it also must be
dismissed for failure to exhaust for the reasons discusses *supra* and because neither charge of
discrimination indicates national origin discrimination.

causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir.

2004).  Minor or trivial actions cannot form the basis of an employment discrimination suit.

*MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir.2005) (quotation omitted).

Generally, a plaintiff may prove gender discrimination by either direct or circumstantial

evidence.  *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008).  Direct evidence

"is evidence from which the trier of fact may conclude, without inference, that the employment

action was undertaken because of the employee's protected status."  *Id.* (citation omitted).

Circumstantial evidence "permits the fact finder to draw a reasonable inference from facts

indirectly related to discrimination that discrimination, in fact, has occurred."  *Adamson v. Multi

Cmty. Diversified Serv.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

When a plaintiff relies on circumstantial evidence, the court applies the three-step

burden-shifting framework enunciated by the Supreme Court in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973) to determine whether the defendant is entitled to summary

judgment.  Under this framework,

> A plaintiff bears the initial burden of setting forth a prima facie case of
> discrimination.  After the plaintiff makes a prima facie case, the burden shifts to
> the employer to give a legitimate, nondiscriminatory reason for its employment
> decision.  If the employer comes forward with a nondiscriminatory reason for its
> actions, the burden then reverts to the plaintiff to show that there is a genuine
> dispute of material fact as to whether the employer's proffered reason for the
> challenged action is pretextual-i.e. unworthy of belief.

*Sanders*, 544 F.3d at 1105 (quotations and citations omitted).  When a plaintiff is a member of a

protected class, establishment of a prima facie case creates a presumption that "unless otherwise

explained, discrimination is more likely than not the reason for the challenged decision." *Notari*

*v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir.1992).

To establish a prima facie case of gender discrimination, a woman must show that: 1) she

belonged to a protected class; 2) she suffered an adverse employment action; 3) she was

qualified for the position at issue; and 4) she was treated less favorably than her male

counterparts. *McDonald v. Salazar*, No. 08-cv-01905-WYD-MJW, 2010 WL 4388301, at *10

(D. Colo. Oct. 29, 2010).  However,

> A male employee is not entitled to rely on the *McDonnell Douglas*
> burden-shifting framework because the presumption of invidious intent created by
> establishing a prima facie case under *McDonnell Douglas* arises precisely because
> the plaintiff belongs to a disfavored group.  When plaintiff is not a member of a
> historically favored group, by contrast, an inference of invidious intent is
> warranted only when background circumstances suggest the suspicion that the
> defendant is that unusual employer who discriminates against the majority.

> Thus, for Plaintiff to establish a claim of reverse gender discrimination, he
> must prove through direct evidence and without reference to *McDonnell Douglas*,
> that his termination was, in fact, motivated by the fact that he is a man.  It is not
> enough . . . for a plaintiff merely to allege that he was a qualified man who was
> treated differently than a similarly situated woman.  Instead, he must allege and
> produce evidence sufficient to support a reasonable inference that, but for his
> status as a man, the challenged decision would not have occurred.

*Id.* (citing *Adamson*, 514 F.3d at 1149) (quotations omitted).

Defendants argue that there is no direct evidence that Defendants' decision not to allow

Plaintiff to attend the industry conference was discriminatory or had any relation to Plaintiff's

gender. (Mot. at 17.)  According to evidence presented by Defendants, Plaintiff sought

permission from his immediate supervisor, Bob Fredrickson, to attend the APEC conference

where he had the opportunity to chair a session.  (Doc. No. 62 Ex. A-13 [Fredrickson Decl.] at

17

2.)  Mr. Fredrickson responded that the travel budget was under heavy scrutiny, every trip

needed a strong business justification, and he was not sure he saw "the business benefit for HP."

(*Id.*)  He asked whether the conference fee would be waived if Plaintiff chaired a session and

how much time Plaintiff would need to prepare because such preparation time would compete

with Plaintiff's other activities at HP.  (*Id.*)  Plaintiff responded, "I get to see a lot of vendors and

new ideas.  Its [sic] educational and I go every year."  (*Id.* at 1.)  In his response, Mr.

Fredrickson again noted the strict travel budget and told Plaintiff that "[i]f he [saw] this

differently, [he] should create a business justification" to take to Ron Rogers to convince him to

make an exception to the travel policy.  (*Id.*)  In his Declaration, Mr. Fredrickson indicates that

Plaintiff never responded to this suggestion and did not contact him further about the APEC

conference.  (Doc. No. 62 Ex. B at ¶ 10.)  In his Declaration, Mr. Rogers indicated that he was

aware from Mr. Fredrickson that Plaintiff had requested permission to travel to the APEC

conference and that Mr. Fredrickson had told Plaintiff to prepare a business justification but

Plaintiff never provided a business justification to Mr. Rogers and never contacted Mr. Rogers

directly about the issue.  (Doc. No. 62 Ex. E [Rogers Decl.] at ¶ 6.)

      Plaintiff does not dispute this evidence in response but argues that he "was screened for a

business purpose whereas a female employee was not." (Resp. at 24.)  He further argues that

"[t]he direct gender discrimination is obvious in the fact that HP to this day has failed to provide

any Business Purpose for the Woman's Conference."  (*Id.*)  Because Plaintiff, as a man, is a

member of a historically favored group, he cannot establish a prima facie case for gender

discrimination by merely alleging "that he was a qualified man who was treated differently than

a similarly situated woman." *Adamson*, 514 F.3d at 1149.  He must "allege and produce

evidence sufficient to support a reasonable inference that, *but for* his status as a man, the

challenged decision would not have occurred." *Id.* (emphasis in original).  Accordingly, Plaintiff

must show that but for his status as a man, he would have been allowed to travel to the APEC

conference.  Plaintiff has provided no evidence to satisfy this burden.

Defendants also argue that the decision not to send Plaintiff to the APEC conference is

insufficient, as a matter of law, to support a Title VII claim.  (Mot. at 17 (citing *Nettle v. Cent.*

*Okla. Am. Indian Health*, 334 F. App'x 914, 927 (10th Cir. 2009) (not permitting attendance at

external events does not represent a significant change in employment status); *Otero v. New*

*Mexico Corr. Dep't*, 640 F. Supp. 2d 1346, 1355-56 (D.N.M. 2009) (noting that plaintiff had

failed to provide evidence that denial of his request to attend annual meetings amounted to an

adverse employment action); *Vitt v. City of Cincinnati*, 250 F. Supp. 2d 885, 892 (S.D. Ohio

2002) (noting dearth of case authority to support position that denial of computer training and

seminar attendance constitutes an adverse employment action)).)  Plaintiff has not responded to

this argument.  The court agrees that the denial of Plaintiff's request to travel to an industry

conference does not alone constitute a "significant change" in Plaintiff's employment status, or

otherwise rise to the level of an adverse employment action.

Because the travel decision does not constitute an adverse employment action and

because Plaintiff has not presented any evidence that, but for his status as a man, the decision

would have been different, summary judgment is appropriate on Plaintiff's gender discrimination

claim arising out of Defendant's travel decision.

*3.*      ***Section 1981 Race Discrimination Claim***

Section 1981 prohibits racial discrimination in the making or enforcement of private or

public contracts. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004). "In

particular, § 1981 protects employees from racial discrimination both in entering into an

employment contract and in enjoying the benefits, privileges, terms, and conditions of

employment."[7] *Id.* (citation omitted). An employee is not required to exhaust administrative

remedies before bringing a claim under 42 U.S.C. § 1981. *Aramburu v. Boeing Co.*, 112 F.3d

1398, 1410 n.9 (10th Cir. 1997).

Generally, to establish a claim for wrongful termination under § 1981, a plaintiff must

show 1) membership in a protected class; 2) that he suffered an adverse employment action; and

3) that the adverse employment action occurred under circumstances which give rise to an

inference of unlawful discrimination. *See Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

The *McDonnell Douglas* burden shifting framework enunciated in the Title VII context also

applies to § 1981 claims but, as with Title VII, the analysis is modified in a case alleging reverse

discrimination. *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1533, 1534 (10th

Cir. 1995) (citing *Notari*, 971 F.2d at 588-89). Thus "a reverse discrimination claimant who

seeks the benefit of the *McDonnell Douglas* presumption, "must, in lieu of showing that he

---

[7] Section 1981 states: "All person within the jurisdiction of the United States shall have
the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by
white citizens . . . ." 42 U.S.C. § 1981(a). "Make and enforce contracts" includes enjoyment "of
all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §
1981(b).

20

belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari*, 971 F.2d at 589.  In the alternative, a plaintiff may present "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.* at 590.

Defendants argue that Plaintiff has not established, or even alleged, any background circumstances demonstrating that HP is one of the unusual employers who discriminates against the majority.  (Mot. at 19.)  Defendants present evidence that Plaintiff was terminated in a work force reduction (WFR) that eliminated approximately twenty-six positions, or sixteen percent of the positions, in the Workstations organization.  (Doc. No. 62 Ex. C [Pilsner Decl.] at ¶ 8.)  According to Defendants, Plaintiff was selected for WFR because his management determined that 1) there was no critical need for an expert-level power design engineer; 2) Plaintiff's narrow area of expertise did not enable him to move to another engineering position; 3) other expert-level engineers had stronger leadership skills and broader knowledge; and 4) although job performance was not a specific criteria, management's determination that Plaintiff had not been performing at an expert level, factored into the determination that there was not a critical need for an expert level engineer.  (Pilsner Decl at ¶ 11; Rogers Decl. at ¶ 9.)  Defendants provide evidence that Plaintiff was evaluated against other expert level engineers and was not compared to an "Iranian student intern" as he alleges in his complaint.  (Pilsner Decl. at ¶ 14; Rogers Decl. at ¶ 11.)  Moreover, Defendants' evidence demonstrates that neither gender, age, ethnicity, religion, health status, or other demographic information was taken into consideration in the

WFR selection process.  (Pilsner Decl. at ¶ 12; Rogers Decl. at ¶ 10.)  Defendants argue that there is no evidence suggesting that, but for the fact that he is white, Plaintiff would have been retained following the work force reduction or that any other employment decisions would have been in Plaintiff's favor.  (Mot. at 19.)

Plaintiff's response consists of commentary, explanation and argument inserted into the text of Defendant's motion using "the redline feature for modifying a document in hopes that it will make the responses easier to relate to the original statements within the motion."[8]  (Resp. at 1.)  He attaches eight exhibits to his response.  The first three pages appear to be statistics relating to the WFR.  (*See* Doc. No. 73-1 and 73-2.)  Pages one and two are entitled "Exhibit B age gender race sorted DEF 292 from Defendant" and appear to present data for three people. (Doc. No. 73-1.)  Page three, which the court assumes is Exhibit A, is untitled and presents information regarding numbers, percentages and average age of employees involved in the WFR. (Doc. No. 73-2.)  These Exhibits appear to be spreadsheets comprised of data that Plaintiff has excerpted from HP's discovery responses.  Exhibits C, D and E appear to be internet news articles.  (Doc. Nos. 73-3, 73-4, 73-5.)  Exhibit F is purportedly an HP document "Technical Career Path: Expert Assessment."  (Doc. No. 73-6.)  Exhibit G consists of two pages of what appear to be slides from a purported HP PowerPoint presentation (Doc. No. 73-7) and Exhibit H is a job description, purportedly for an Analog/Power Engineer with HP (Doc. No. 73-8).

---

[8] The resulting document is thirty-four pages long and fails to comply with the presiding judge's practice standards in several respects: it exceeds the 15 page limit for response briefs and it does not include a "Response to Movant's Material Facts."  (*See* Chief Judge Wiley Y. Daniel Practice Standards for Civil and Criminal Matters, Section II.E.1 and III.B.4.)

Plaintiff argues that, with Exhibits A and B he has proven that "the layoff targeted a specific group of employees based on gender, race, and age." (Resp. at 23; *see also* Resp. at 4, 5.) In reply, Defendants object that Plaintiff has not properly supported his assertions and therefore they should be disregarded. (Reply at 5.) They also note that the WFR related to the entire Workstations organization, comprising approximately 166 employees, approximately 27 of whom were laid off in the WFR (*see* Pilsner Decl. at ¶ 8; Doc. No. 77 Ex. Q) while Plaintiff appears to have selectively excerpted data for three "electrical hardware engineers" from the WFR data that HP produced in discovery. (Reply at 6.)

Plaintiff's arguments and purported evidence relating to age and gender in the WFR are irrelevant as the court lacks jurisdiction to consider these claims due to Plaintiff's failure to exhaust administrative remedies. In light of Defendants' evidence regarding the WFR data, Exhibit B does not appear to be statistically accurate or relevant, and Plaintiff has provided no foundation for its admissibility.[9] The court notes that Plaintiff did not indicate race discrimination as a basis for his compliant when he filed this lawsuit (*see* Doc. Nos. 3 and 5) and in response to Defendants' Interrogatory No. 3, he stated, "at this time, no known racial discrimination occurred." (Doc. No. 62 Ex. J at 2.) Furthermore, none of the purported evidence Plaintiff provides suggests HP is one of those unusual employers who discriminates against the majority or supports a reasonable probability that but for Plaintiff's status as white, he would not have been terminated. *Notari*, 971 F.2d at 589, 590. Accordingly, Plaintiff has not established a

---

[9] Only admissible evidence may be considered at the summary judgment stage. *Johnson*, 594 F.3d at 1209-10.

23

prima facie case of race discrimination under § 1981 and summary judgment should be granted

on this claim.

### 4. State Law Claims

a. Breach of Contract/Promissory Estoppel

Plaintiff asserts a claim for breach of contract and promissory estoppel against HP based

on his termination without cause and because HP allegedly did not follow its own policies and

procedures for an employee to appeal an "Improvement" rating. (*See* Compl. at ¶ 60.)

In Colorado, "there is a presumption that an employee hired for an indefinite period of

time is an at-will employee who may be terminated for no cause whatever at any time." *Martin*

*Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 n.1 (Colo. 1992). Under certain circumstances the

presumption of an at-will relationship may be rebutted by evidence of specific statements by the

employer. *Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 919 (Colo. App. 1997) (citing

*Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987)).

Defendants present evidence that Plaintiff acknowledged in three separate writings that

his employment was at-will and admitted in his deposition that no one authorized by HP

represented to him that his employment was anything other than at-will. (*See* Doc. No. 62 Exs.

A-6, A-7, A-8 and Pl.'s Dep. at 112:23-113:16.) Defendants also maintain that there are no HP

policies changing Plaintiff's at-will status or establishing a procedure for an employee to appeal

a WFR or employment rating decision. (Snow Decl. at ¶¶ 6, 7.)

In response Plaintiff claims that "managers Fredrickson and Conrady both stated that an employee has a right to protest his Focal Point Review" but he provides no evidence to support this assertion.  (Resp. at 27-28.)

The court finds that Defendants have provided evidence that Plaintiff acknowledged his at-will status in three separate writings and in his deposition testimony and that Defendants do not have a policy to appeal an employment rating.  Plaintiff has not provided any evidence to dispute Defendants' evidence and therefore Plaintiff has not established a genuine issue of material fact that his employment was not at-will or that HP failed to follow policies.  *See* Fed. R. Civ. P. 56(c) and (e).  Accordingly, summary judgment is appropriate on this claim.

   b.  Negligence

Plaintiff asserts a claim for negligence against "Defendant Coros[10]  and Defendant Ms. Swank" based on the alleged improper handling of Plaintiff's complaints of gender and age bias and his inability to protest his employment rating.  (*See* Compl at 17.)

To establish a claim for negligence "a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury."  *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1074 (Colo. 2010).

---

[10] Coros is not included in the caption of Plaintiff's complaint, is not listed as a party, and there are no factual allegations involving a "Coros."  Defendant states that there is "no Defendant Coros at HP."  (Mot. at 21.)  Defendant Coros appears to be a remnant from the internet complaint which Plaintiff used as a template for his complaint and, therefore, the court does not address this defendant.

Defendants argue that Plaintiff cannot establish that Defendant Swank owed any legal duty to Plaintiff.  Defendants present evidence that Defendant Swank never met or spoke to Plaintiff; she did not participate in any of the decisions about which he complains; and responding to Plaintiff's personnel concerns was not part of her job.  (*See* Pl.'s Dep. at 33:10-33:14; 51:6-52:18; Doc. No. 62 Ex. H [Swank Decl.] at ¶¶ 5-7, 10-11, 13.)  Moreover, HP does not have a policy which provides employees a right to appeal a WFR or employment review. (Snow Decl. at ¶ 7.)

Plaintiff responds that, despite several requests to protest his Focal Point Review, Defendant Swank did nothing, "thus refusing to support an employee, refusing to perform her duties as a personnel representative and thus committing negligence."  (Resp. at 28.)   Plaintiff has provided no evidence to support this conclusory allegation.

The court finds that Defendants have presented evidence that responding to Plaintiff's personnel issues was not part of Defendant Swank's job and Plaintiff has not established that Defendant Swank owed him a duty of care.  Therefore, summary judgment is appropriate on this claim.

c.    Intentional Infliction of Emotional Distress

Plaintiff asserts a claim for intentional infliction of emotional distress against all three defendants.  (*See* Compl. at 18.)  His claim is based on allegations that, "despite actual and/or constructive knowledge that the accusations were unfounded, [Plaintiff] was written-up and disciplined for alleged infraction of company policy, and was targeted for terminated [sic] from his employment."  (*Id.* at ¶ 71.)  He also alleges that Defendants "brand[ed] [Plaintiff] as unable

26

to pursue other opportunities within [HP] by changing a policy during the period when [Plaintiff] had an active gender bias complaint in process and had indicated age bias was taking place through his being replaced by a younger, less experienced employee and retention of younger, less experienced employees." (*Id.* at ¶ 72.) Plaintiff claims that, as a result of Defendants' extreme and outrageous conduct, Plaintiff "suffered severe emotional distress and lives in degrading conditions." (*Id.* at ¶ 75.)

In Colorado, a claim for intentional infliction of emotional distress is the same as a claim for outrageous conduct. *See Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009). A plaintiff must establish that 1) the defendant engaged in extreme and outrageous conduct; 2) the defendant engaged in conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and 3) the plaintiff incurred severe emotional distress which was caused by the defendant's conduct." *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (citing Restatement (Second) of Torts § 46(1) (1965)). Whether conduct is outrageous is a threshold question of law. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (citing *Culpepper*, 877 P.2d at 883). Outrageous conduct is conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Culpepper*, 877 P.2d at 883 (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988)).

Defendants argue that Plaintiff's claim fails as a matter of law as Plaintiff was an "employee with a long history of documented performance problems who ultimately lost his job along with many other employees in a WFR." (Mot. at 22.) In addition to the evidence

27

establishing the basis for Plaintiff's inclusion in the WFR cited *supra*, Defendants submit

evidence of performance issues documented in Plaintiff's annual performance reviews for 2006

and 2007 and a corrective action Performance Warning in 2008.  (Fredrickson Decl. at ¶¶ 6, 7;

Doc. No. 62 Exs. B-1, B-2, B-4.)

Plaintiff's response includes commentary that "putting an employee on the street during

the worst economy since the Great Depression is an outrage" and that

> HP retained not one but TWO employees from hostile countries while letting the
> Plaintiff, an American citizen, be laid off.  This is an outrage to our military and
> the Plaintiff's heritage of enlisted relatives and friends.  It is also an outrageous
> act against US law currently in place which states that citizens of hostile countries
> are to be kept form obtaining advanced technology.

(Resp. at 29, 30.)  He also claims that "Defendant's [sic] cannot relate any performance issues

that affected the production of workstation products or impacted revenue and/or profits."  (*Id.* at

30.)  Plaintiff has not provided any evidence to support his arguments.

Under Colorado law, an employer that is legally entitled to discharge an employee is not

liable for emotional distress related to that discharge.  *Bigby v. Big 3 Supply Co.*, 937 P.2d 794,

800 (Colo. App. 1996).  The "mere allegation by an employee that he was dismissed or demoted

wrongfully, summarily, or in violation of the employers [sic] policies and procedures fails to

state a claim for outrageous conduct."  *Bellairs v. Coors Brewing Co*, 907 F. Supp. 1448, 1459

(D. Colo. 1995).  Moreover, a claim of discrimination alone does not support a claim for

intentional infliction of emotional distress.  *Bigby*, 937 P.2d at 800 (stating that under such a

theory, "any employment discrimination claim, whether based on race, national origin, religion,

sex, age, or disability, regardless of the attendant circumstances, would automatically constitute outrageous conduct [and concluding] that the tort of outrageous conduct does not reach so far").

"The purpose of a summary judgment motion, unlike that of a motion to dismiss, is to determine whether there is evidence to support a party's factual claims. Unsupported conclusory allegations thus do not create a genuine issue of fact." *L&M Enter., Inc. v. BEI Sensors & Sys.*, 231 F.3d 1284, 1287 (10th Cir. 2000). Defendants have provided evidence that HP was legally entitled to discharge Plaintiff and that he was not discharged for any improper reason. Plaintiff's conclusory allegations and commentary do not establish a genuine issue of material fact that Defendants' conduct was outrageous. Accordingly, summary judgment on this claim is appropriate.

        d.     Intentional Interference with Contractual Relationship

Finally, Plaintiff asserts a claim for intentional interference with a contractual relationship against Defendant Swank. He alleges that she was "instrumental in improperly influencing and tainting the right to protest process so that [Plaintiff's] termination would be justifiable." (Compl. at ¶ 81.)

"One who intentionally and improperly interferes in the performance of a contract between another and a third person is liable in tort to the other for the pecuniary loss resulting from the nonperformance of the contract." *W.O. Brisben Co., Inc. v. Krystkowiak*, 66 P.3d 133, 136 (Colo. App. 2002). To state a claim for intentional interference with a contractual relationship, a plaintiff must establish 1) the existence of a valid contract between the plaintiff and a third party; 2) knowledge by the defendant of this contract; 3) intent by the defendant to

induce a breach of this contract by the third party; 4) action by the defendant which induces a breach of the contract; and 5) damage to the plaintiff. *Comtrol, Inc. v. Mountain States Tel. & Tel. Co.*, 513 P.2d 1082, 1084 (Colo. App. 1973). An agent of the third party will not be held liable for tortious interference with a contract unless the agent was "motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the partes." *W.O. Brisben*, 66 P.3d at 137.

Defendants argue that, although Defendant Swank knew of Plaintiff's employment relationship with HP, there is no evidence that Defendant Swank intentionally interfered with that relationship or had a desire to harm either Plaintiff or HP. (Mot. at 23.) In response, Plaintiff argues that Defendant Swank's "failure to assist in the bias matter [and her] failure to step in and allow the Plaintiff to protest his Focal Point Review are both decisions that weighed into the Plaintiff ultimately being laid off" and prevented him from seeking other opportunities within HP. (Resp. at 32.)

Again, Plaintiff has not provided any evidence to support his claim, and has not made any arguments regarding Defendant Swank's intent to induce a breach of contract or that she was motivated only by a desire to harm HP or Plaintiff or to interfere in their contractual relations. Plaintiff's conclusory statements are insufficient to create a genuine issue of material fact and summary judgment should be granted.

30

## PLAINTIFF'S MOTION TO AMEND

Plaintiff's "Amended Claim" (Doc. No. 54) purports to correct his initial complaint and add a claim for disability discrimination under the Americans with Disabilities Act (ADA).  The court construes this document as a motion to amend the complaint.

### A.      *Procedural Background*

On July 13, 2010, this court held a scheduling conference and set discovery deadlines. The court set the deadline to amend the pleadings at August 27, 2010.  (Doc. No. 28 at 8.)  On October 14, 2010, Plaintiff filed an "Amended Claim."  (Doc. No. 38.)  The court construed this as a motion to amend his compliant and denied it without prejudice because Plaintiff failed to confer with Defendants to determine whether Defendants opposed his amendments before filing his motion as required by D.C.COLO.LCivR 7.1A.  (*See* Doc. No. 40.)  The court cautioned plaintiff that pro se litigants are required to follow the same rules of procedure that govern other litigants and noted that the Tenth Circuit has upheld dismissals in situations where the parties refused to obey court orders.  (*Id.*)

On February 28, 2011, Plaintiff filed the current "Amended Claim."  At the outset he states:

> Note that this Amended Claim was first submitted on October 11, 2010.  At the time, the motion was denied as the E.E.O.C. had yet to rule on the Amended Bias claim based on violation of the American's with Civil Disabilities Act.[11]  The E.E.O.C. ruled on December 15, 2010 (Exhibit #1) that the Plaintiff has a right to

---

[11] Presumably, Plaintiff refers to his August 2010 charge of discrimination which alleged disability discrimination.  This statement is incorrect as Plaintiff's previous "Amended Claim" was filed on October 14, 2010 and was denied for failure to confer.

sue based on the American's with Civil Disabilities Act Amendment of 2008 and therefore, this additional claim is being added to the initial bias claim in accordance with the E.E.O.C.'s decision.

Comes now that Plaintiff [] is filing an Amended Claim for Civil Action No. 10-cv-00562-WYD-KMT.  Included in this claim are corrections of the initial claims as well as new claims that are being filed as a result of the discovery process. . . .

The Plaintiff learned in a July 26, 2010 conference with Agent Helbis Varangot of the E.E.O.C. that he had a valid claim against the defendant for wrongful termination based on the expanded laws of the Americans with Disabilities Act as per the amendments made in 2008 which took effect on January 1, 2009.

(Doc. No. 54 at 1-2.)  Plaintiff did not confer with Defendants prior to filing his "Amended Claim" in February.

**B.    *Legal Standard***

Because Plaintiff filed his motion after the deadline for amending the pleadings, the court employs a two-step analysis, first determining whether Plaintiff has shown good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b), then evaluating whether Plaintiff has satisfied the standard for amendment of pleadings under Federal Rule of Civil Procedure 15(a).  This Court has said that

Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l, Inc*., 204 F.R.D. 667, 668 (D. Colo. 2001) (internal citations omitted).

Once Plaintiff has shown good cause for modifying the scheduling order, he must also satisfy the requirements of Rule 15(a) for amending the pleadings. Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## C.     *Analysis*

The deadline for amending the pleadings was August 14, 2010. On February 28, 2011, more than six months after the deadline expired, Plaintiff filed the present motion. The initial statement in Plaintiff's Amended Claim can be construed as arguing that he did not learn of his ADA claim until July 26, 2010. (*See* Doc. No. 54 at 2.) However Plaintiff has offered no explanation as to why, after learning of the claim, he did not seek leave to amend before the August 14, 2010 deadline. Nor has Plaintiff explained why he did not promptly refile his motion in October, 2010, after the court denied it without prejudice for failure to confer, rather than wait until February of 2011.

Plaintiff's initial statement might also be construed as arguing good cause to amend the scheduling order because the EEOC did not issue a right to sue letter on Plaintiff's August 2010

33

charge of discrimination until December 15, 2010. (*See* Doc. No. 54 at 1.) Assuming that this establishes good cause, Plaintiff's attempt to amend must nevertheless be denied because Plaintiff's proposed amendments are futile. *See Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) (noting that "[a] court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment").

First, the proposed edits and corrections to Plaintiffs complaint address errors not relevant to the findings the court has made in recommending that either dismissal or summary judgment be granted as to all of Plaintiff's claims. Many of the edits correct errors that are a remnant of the internet complaint Plaintiff used as a model for his complaint. Second, to the extent Plaintiff seeks to sue HP for breach of company policy, the amendment is futile because HP has provided unrefuted evidence that it does not have the policy Plaintiff contends, as discussed above. Similarly, to the extent Plaintiff seeks to include Defendant Rogers in his claim for negligence, his claim fails for the same reasons as it does against Defendant Swank.

Finally, Plaintiff's proposed addition of a claim for disability discrimination under the ADA is futile for failure to timely exhaust administrative remedies. Like Title VII and the ADEA, the ADA requires a plaintiff to timely file a charge of discrimination within 300 days of the challenged discriminatory action. *Haynes*, 456 F.3d at 122. Plaintiff included a claim for disability discrimination in his second charge of discrimination, filed with the EEOC on August 4, 2010. (*See* August 2010 Charge.) He claims that HP used his disability as a pretext for his layoff, which, according to Plaintiff, occurred on July 31, 2009. (*Id.*) Thus, the last day of

alleged disability discrimination was July 31, 2009, more than one year (369 days) before he

filed his charge.  Because Plaintiff failed to timely file a charge of discrimination as to his

disability discrimination claim, it would be subject to summary judgment and therefore is futile.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that 'Defendants' Combined Motion to Dismiss Claims Pursuant to

Fed. R. Civ. P. 12(b)(1) for Failure to Exhaust Administrative Remedies and for Summary

Judgment as to Remaining Claims" (Doc. No. 62) be GRANTED and

RECOMMENDS that Plaintiff's "Amended Claim" (Doc. No. 54) be DENIED and

RECOMMENDS that this matter be dismissed in its entirety.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 23rd day of May, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge